UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TERESA FLORES VALDEZ,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

CASE NO. C16-1870-RJB-BAT

**REPORT AND RECOMMENDATION**

Plaintiff Teresa Flores Valdez seeks review of the denial of her Supplemental Security Income application. She contends the ALJ erred (1) at step two by failing to include all severe impairments; (2) in assessing medical opinions; (3) by discounting Ms. Flores Valdez's subjective statements; and (4) at step five in relying on vocational testimony elicited in response to an incomplete hypothetical.[1] Dkt. 18 at 1. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Ms. Flores Valdez is currently 26 years old, has a high school diploma and no work

---

[1] The fourth assignment of error reiterates arguments made elsewhere, and need not be addressed separately. *See* Dkt. 18 at 18.

REPORT AND RECOMMENDATION - 1

history.[2] On December 27, 2011, she protectively applied for benefits, alleging disability as of her date of birth. Tr. 189-94, 266. Her application was denied initially and on reconsideration. Tr. 89-92, 96-99. The ALJ conducted a hearing on March 5, 2013 (Tr. 31-62), and subsequently found Ms. Flores Valdez not disabled. Tr. 17-27.

The Appeals Council denied Ms. Flores Valdez's request for review (Tr. 1-4), and Ms. Flores Valdez sought judicial review. The U.S. District Court for the Western District of Washington granted the parties' stipulation to reverse the ALJ's decision and remand for further administrative proceedings. Tr. 410-11.

The ALJ held a second hearing on June 16, 2016. Tr. 340-82. On August 26, 2016, the ALJ found Ms. Flores Valdez not disabled. Tr. 321-34. Ms. Flores Valdez seeks judicial review of that decision. Dkt. 5.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found:

**Step one:** Ms. Flores Valdez had not engaged in substantial gainful activity since her application date.

**Step two:** Ms. Flores Valdez's learning disorder, expressive language disorder, and borderline intellectual functioning are severe impairments.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[4]

**Residual Functional Capacity ("RFC"):** Ms. Flores Valdez has the RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations: she can perform unskilled, repetitive, routine work, with no contact with the public and occasional contact with supervisors and co-workers.

**Step four:** Ms. Flores Valdez has no past work.

---

[2] Tr. 35-36, 270.

[3] 20 C.F.R. §§ 404.1520, 416.920.

[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 2

**Step five:** As there are jobs that exist in significant numbers in the national economy that Ms. Flores Valdez can perform, she is not disabled.

Tr. 321-34.

## DISCUSSION

### A. The ALJ did not err at step two

Ms. Flores Valdez argues the ALJ erroneously found her left arm impairment was not severe. The ALJ described Ms. Flores Valdez's complaints related to her left arm, but found her symptoms "primarily resolved with physical therapy" and did not meet the twelve-month durational requirement. Tr. 324-25.

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). A diagnosis alone is not sufficient to establish a severe impairment. Instead, a claimant must show his medically determinable impairments are severe. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Ms. Flores Valdez raises a number of challenges to the ALJ's findings regarding her left arm impairment. First, she argues the ALJ erred in overlooking diagnoses provided by an examining psychologist and a non-examining State agency consultant regarding her arm condition. Dkt. 18 at 3. But the ALJ did not find that Ms. Flores Valdez's arm condition was not medically determinable; instead, he found it was not severe. Neither of the opinions cited by Ms. Flores Valdez establish that her arm condition was severe — in fact, the State agency consultant specifically indicated that her arm impairment was *not* severe. *See* Tr. 80.

REPORT AND RECOMMENDATION - 3

Accordingly, Ms. Flores Valdez's reference to these opinions does not establish error in the ALJ's decision.

Ms. Flores Valdez also challenges the ALJ's finding that her arm symptoms did not meet the twelve-month durational requirement, by pointing to a February 2012 record describing Ms. Flores Valdez's reported symptoms as well as an April 2013 report. Dkt. 18 at 4. That more than twelve months expired between these reports does not establish that the symptoms meet the durational requirement, because there is no evidence that Ms. Flores Valdez's symptoms continuously existed during the interim. *See* 42 U.S.C. § 423 (d)(1)(A) (disability means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months"). The ALJ's summary of Ms. Flores Valdez's left-arm complaints describes them as "intermittent" (Tr. 325) and her identification of sporadic complaints does not establish error in the ALJ's decision.

Ms. Flores Valdez also points to 2015 treatment records related to her arm condition, but, as found by the ALJ, these records indicate that her symptoms resolved with physical therapy in three months. Dkt. 18 at 4-5; Tr. 521-29. The records indicate that Ms. Flores Valdez was discharged from physical therapy, having met all of her goals for improved function. Tr. 529-32. Although Ms. Flores Valdez correctly notes that none of her providers opined that she had no remaining functional limitations at the end of her physical therapy treatment (Dkt. 18 at 6), it is Ms. Flores Valdez's burden to show that she has a severe impairment. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Pointing to a lack of evidence describing her limitations does not satisfy her burden.

Ms. Flores Valdez also argues the ALJ erred in relying on her lack of treatment for her

arm condition during most of the adjudicated period, indicating that the ALJ should have considered why she did not seek treatment. Dkt. 18 at 7. But there is no evidence in the record related to her reasons for not seeking treatment. Ms. Flores Valdez points to a statement she made to agency personnel, regarding her lack of insurance, but this statement in its entirety only further undermines her complaints of a severe arm impairment: "Claimant does not see a doctor since she is healthy and her condition o[f] mentally delayed is not treated with medication. Claimant does not have medical coverage and would only go to the doctor in case of a severe illness." Tr. 296. Although Ms. Flores Valdez also cites her mental impairments as a reason that she did not seek treatment, there is no evidence in the record that her mental limitations caused her to be unable to seek treatment, particularly because she eventually did seek treatment, in 2015. Dkt. 18 at 7-8.

For all of these reasons, Ms. Flores Valdez has failed to show an error in the ALJ's step-two findings, and they should be affirmed.

**B.      The ALJ properly rejected Ms. Flores Valdez's testimony**

The ALJ discounted Ms. Flores Valdez's testimony, finding that although she has some limitations, those limitations are not disabling in light of medical evidence showing that she can perform unskilled work, and her own description of her activities. Tr. 329-31. The ALJ also cited evidence showing Ms. Flores Valdez lacks the motivation to work, rather than the ability to work. *Id*. Ms. Flores Valdez contends that these reasons are not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

      **1.      Medical evidence**

The ALJ cited the opinion of consultative examiner Kees Hofman, Ph.D., as evidence that Ms. Flores Valdez could perform unskilled work, as well as school records indicating that

she could adequately communicate. Tr. 329-30. Ms. Flores Valdez argues that the ALJ overlooked Dr. Hofman's opinion that she would require a change of environment or placement in a residential setting, in order to make changes in her life. Dkt. 18 at 18-19.

But, as noted by the ALJ, Dr. Hofman attributed Ms. Flores Valdez's problems to her overprotective family. Tr. 304-05. Such limitations are not relevant to the ALJ's inquiry, which is concerned with determining the limiting effects of Ms. Flores Valdez's medically determinable impairments. Tr. 332. Likewise, Dr. Hofman's opinion does not indicate most that Ms. Flores Valdez can do, and it therefore has less probative value to the ALJ's inquiry. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (RFC "is the most you can still do despite your limitations."). Accordingly, Ms. Flores Valdez has not shown that the ALJ erred in assessing the medical evidence, specifically Dr. Hofman's opinion, in finding it to be inconsistent with allegations of disability.

### 2.  Ms. Flores Valdez's activities

The ALJ noted inconsistencies between Ms. Flores Valdez's testimony describing limited computer use, specifically an inability to understand Facebook, with her report to Dr. Hofman that her daily activities include checking Facebook. Tr. 330. Ms. Flores Valdez contends there is no inconsistency in the statements, because she testified that she required help from her cousins to use Facebook and she sees them often, so she could have been referring to using Facebook with her cousins during Dr. Hofman's evaluation. Dkt. 18 at 19. The entirety of Ms. Flores Valdez's testimony about her Facebook use can be reasonably found inconsistent with her report to Dr. Hofman, however. She testified, in relevant part:

[ALJ]: Do you have a Facebook account?

[Ms. Flores Valdez]: No.

REPORT AND RECOMMENDATION - 6

[ALJ]: Have you ever been on Facebook?

[Ms. Flores Valdez]: Yeah, with my cousins, yeah. My cousins made me one so I don't feel like alone and stuff. But I don't go on it.

[ALJ]: And did your cousins make a Facebook account for you?

[Ms. Flores Valdez]: Uh-huh.

[ALJ]: Is that a yes?

[Ms. Flores Valdez]: Yes, Your Honor.

[ALJ]: Did they show you how to get on and read messages from your friends?

[Ms. Flores Valdez]: Yeah, but it's too confusing. It's too much for me.

[ALJ]: Did you read any of the messages when they pulled them, of your friends?

[Ms. Flores Valdez]: Yeah.

[ALJ]: And do you remember what any of them said, what kinds of things they said, the messages from your friends?

[Ms. Flores Valdez]: No, like I can't like summarize them like how you been, Teresa, how's life treating you, and stuff like I haven't seen you for awhile and stuff.

[ALJ]: Do you remember what you answered?

[Ms. Flores Valdez]: No, I think I only like I've been good and that's it. That's the only thing I can remember.

Tr. 39. The ALJ reasonably found this description of minimal Facebook use to be inconsistent with Ms. Flores Valdez's report to Dr. Hofman, which suggested more regular use. *See* Tr. 330.

Ms. Flores Valdez also argues the ALJ erred in finding her ability to watch a movie, play board games, read, watch television, and complete household chores and personal care activities to undermine allegations of concentration deficits, because she testified that she had problems engaging in all of these activities. Dkt. 18 at 19-20. As noted by the ALJ, Ms. Flores Valdez's statements to providers do not describe similar limitations. *See, e.g.*, Tr. 303-04, 531-32. Ms.

Flores Valdez goes on to point to the ALJ's reasoning with regard to a lay statement written by her mother, regarding Ms. Flores Valdez's ability to babysit. Dkt. 18 at 22 (citing Tr. 331). Ms. Flores Valdez argues that her testimony shows that she did not babysit, yet she reported to Dr. Hofman that she did babysit on rare occasions. *See* Tr. 303. Although Ms. Flores Valdez suggests that the ALJ should have credited her hearing testimony, the ALJ did not err in noting that other statements she made to providers were reasonably inconsistent with her testimony and allegations. *See* Social Security Ruling 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016) (instructing adjudicators to consider the entire record when evaluating a claimant's symptoms). The ALJ did not err in finding that Ms. Flores Valdez's inconsistent statements describing her abilities and activities undermined the veracity of her subjective testimony.

### 3. Lack of motivation

Ms. Flores Valdez argues the ALJ erred in discounting her subjective testimony on the grounds that she lacks motivation to work, because her lack of motivation stems from her borderline intellectual functioning, as indicated by Dr. Hofman. Dkt. 18 at 22-23.

Dr. Hofman's opinion does not explicitly link Ms. Flores Valdez's borderline intellectual functioning with her lack of motivation, however. Instead, Dr. Hofman posited that *either* Ms. Flores Valdez's intellectual deficits *or* her lack of motivation have stopped her from exploring career planning on her own, and her family limits her development as well. Tr. 304-05. Dr. Hofman's recommendations for a change of environment suggest that Ms. Flores Valdez's lack of motivation results from her family and living environment, rather than her impairments. Consequently, the ALJ reasonably found that the evidence suggested a lack of motivation to work, and did not err in discounting Ms. Flores Valdez's testimony on that basis. *See Osenbrock*

REPORT AND RECOMMENDATION - 8

*v. Apfel*, 240 F.3d 1157, 1165-67 (9th Cir. 2001) (finding that an ALJ properly discounted a claimant's testimony due to evidence of self-limitation and lack of motivation).

Ms. Flores Valdez also argues that the ALJ's decision is internally inconsistent with regard to her attempt at nursing school. Dkt. 18 at 23. The ALJ noted that Ms. Flores Valdez told a provider that she had to drop out of nursing school, but that there was no evidence of her pursuing schooling, vocational training, or work. Tr. 331 (citing Tr. 316). In fact, she explicitly denied applying for any school after high school at the first administrative hearing. Tr. 36. In any event, this evidence does not undermine the ALJ's findings with regard to Ms. Flores Valdez's lack of motivation.

Because the ALJ provided multiple clear and convincing reasons to discount Ms. Flores Valdez's subjective testimony, the ALJ's findings in this regard should be affirmed.

**C.    The ALJ's evaluation of the medical opinions**

Ms. Flores Valdez argues the ALJ erred in assessing opinions provided by State agency medical consultant Dennis Koukol, M.D.; Dr. Hofman; and State agency psychological consultants Eugene Kester, M.D., and James Bailey, Ph.D.

Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). "[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other

evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

**1.      Dr. Koukol**

As discussed above, Dr. Koukol described Ms. Flores Valdez's arm condition as not severe, but also referenced several physical limitations that it caused. Tr. 80-84. The ALJ rejected Dr. Koukol's opinion, finding that the limitations he assessed were inconsistent with an opinion that her impairment was not severe. Tr. 326. The ALJ also noted that Dr. Koukol cited no medical evidence that supports those restrictions, and that his opinion was inconsistent with Ms. Flores Valdez's lack of treatment at the time, and her rapid improvement with subsequent physical therapy. *Id*.

The lack of clinical findings supporting Dr. Koukol's opinion indicates that it does not amount to substantial evidence, despite Ms. Flores Valdez's argument that Dr. Koukol's opinion is "consistent with independent clinical findings reported by Plaintiff's examining physical therapist; examining psychologist Dr. Hofman; and Plaintiff's testimony." Dkt. 18 at 11. At the time that Dr. Koukol rendered his opinion, Ms. Flores Valdez had not yet sought physical therapy and had not testified at an administrative hearing; the only clinical evidence cited in Dr. Koukol's assessment form is Dr. Hofman's opinion. *See* Tr. 82-84. Dr. Hofman's psychological opinion does not constitute independent clinical findings that can support Dr. Koukol's opinion, because Dr. Hofman did not perform a physical examination, and such an examination would have been out of his area of expertise as a psychologist. Because Dr. Koukol's opinion was not based on independent clinical evidence, as found by the ALJ, it does not constitute substantial evidence.

Ms. Flores Valdez argues that the ALJ erred in rejecting Dr. Koukol's opinion on the

REPORT AND RECOMMENDATION - 10

grounds that she had no severe physical impairment, but this argument is based on a misunderstanding of the ALJ's decision. The ALJ found Dr. Koukol's opinion to be internally inconsistent — the inconsistency is between Dr. Koukol's description of Ms. Flores Valdez's limitations and his opinion that she has no severe physical impairment. Thus, the ALJ did not reason "backward," as alleged by Ms. Flores Valdez, from his own step-two finding, but instead noted an inconsistency within Dr. Koukol's opinion. Dkt. 18 at 11. That inconsistency is a clear and convincing reason to discount Dr. Koukol's opinion. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (ALJ appropriately considers internal inconsistencies within and between physicians' reports).

### 2. Dr. Hofman

The ALJ gave partial weight to Dr. Hofman's opinion:

> The undersigned notes that Dr. Hofman did not provide a function-by-function analysis. Yet, he opined that a significant part of the claimant's problems related to her environment, which allowed her to be passive and dependent on her family. While this may be true, this factor provide[s] minimal insight into the most the claimant is capable of doing. The undersigned also gives little weight to Dr. Hofman['s] Global Assessment of Functioning (GAF) score of 45 ([Tr. 304]). However, GAF scores are highly subjective. The GAF scores intertwine psychological symptoms, physical impairments, and socioeconomic factors, and therefore not completely reliable. However, the undersigned gives weight to objective testing by Dr. Hofman.

Tr. 332.

Ms. Flores Valdez contends that the ALJ erred in faulting Dr. Hofman primarily for failing to provide a function-by-function analysis, because Dr. Hofman was not required to provide such an analysis. Dkt. 18 at 14. But the ALJ did not indicate that Dr. Hofman was required to provide a function-by-function analysis, and therefore Ms. Flores Valdez's argument is irrelevant. The ALJ, however, *is* bound to perform a function-by-function analysis, which

renders Dr. Hofman's opinion less probative as to that inquiry because it does not address Ms. Flores Valdez's abilities to perform various work activities.

Furthermore, as noted by the ALJ, Dr. Hofman's opinion attributes some of Ms. Flores Valdez's problems to her family environment, which is not a medically determinable impairment, and the opinion therefore does not address the most that Ms. Flores can do. This reasoning is persuasive, because Dr. Hofman's opinion addresses issues beyond the scope of the ALJ's inquiry. *See* SSR 96-8p, 1996 WL 374184, at *1 ("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments[.]").

Lastly, the ALJ noted that Dr. Hofman's GAF score was subjective and considered issues beyond the scope of a disability determination, and was therefore entitled to little weight. Tr. 332. This reasoning is persuasive, because Dr. Hofman did not explain the basis for his GAF score and GAF scores do not correspond directly to the requirements of the Social Security disability program. *See McFarland v. Astrue*, 288 F3d. Appx. 357, 359 (9th Cir. Jul. 25, 2008).

The ALJ's reasons to assign only partial weight to Dr. Hofman's opinion are clear and convincing, and therefore this portion of the ALJ's reasoning should be affirmed.

### 3. Drs. Kester & Bailey

State agency psychological consultants Drs. Kester and Bailey described Ms. Flores Valdez's mental limitations, and the ALJ purported to give partial weight to their assessment. Tr. 332 (referencing Tr. 71-73, 84-86). The ALJ did not, however, provide any reason to discount any portion of their assessment. Tr. 332. Ms. Flores Valdez contends that this is error because the ALJ's RFC assessment does not fully account for all of the restrictions identified by Drs. Kester and Bailey, specifically their indication that she could not perform detailed work,

could work with only a "few" co-workers, and required a "relatively lower stress environment[.]" *See* Tr. 85-86.

The Commissioner contends that the RFC assessment adequately accounts for a prohibition on "detailed" work, because the ALJ limited Ms. Flores Valdez to unskilled, repetitive, routine work. Dkt. 22 at 13. But unskilled, repetitive, routine work is not necessarily simple, and therefore does not necessarily preclude detailed work. *See* SSR 00-4p, 2000 WL 1989704, at *3 (Dec. 4, 2000) (explaining that "unskilled" work corresponds to jobs requiring Specific Vocational Preparation level 1-2); *Gonzales v. Astrue*, 2012 WL 14002, at *13 (E.D. Cal. Jan. 4, 2012) ("Defining particular jobs as 'unskilled' speaks more to the issue of the level of vocational necessary to perform the job rather than the issue of the job's simplicity . . ."). Accordingly, the ALJ's RFC assessment does not fully account for the State agency consultants' opinions that Ms. Flores Valdez cannot perform detailed tasks, and the ALJ provides no reason why their opinions were rejected.

The Commissioner's defense as to the co-worker issue is similarly unpersuasive. The Commissioner argues that the ALJ accounted for the State agency opinions that Ms. Flores Valdez was restricted to working with a "few" co-workers by limiting her to occasional co-worker interaction. Dkt. 22 at 13-14. But a restriction to occasional interaction address the frequency of the interaction, rather than the number of people interacted with. Thus, the ALJ's RFC assessment is not fully consistent with the State agency opinions, and the ALJ did not provide any reason to depart from those opinions.

Because the ALJ erred in at least these two ways in assessing the State agency opinions, and these errors impacted the RFC assessment and are therefore harmful, the ALJ's decision must be reversed. Although Ms. Flores Valdez suggests the ALJ's errors could be remedied by a

remand for a finding of disability, a remand for administrative proceedings is instead appropriate, in light of the conflicts in the record that should be resolved through further administrative proceedings. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014).

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reassess the State agency psychological consultants' opinions. The ALJ shall use the five step disability process, develop the record as needed, and reassess Ms. Flores Valdez's RFC and ability to perform work at step as appropriate.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **June 27, 2017.** If no objections are filed, the Clerk shall note the matter for **June 30, 2017**, as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed ten pages. The failure to timely object may affect the right to appeal.

DATED this 13th day of June, 2017.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14